## Consolidation Coal Company, Appellee, v. Astrid S. Rosing, Inc., Appellant.

### Gen. No. 27,647.

1. SALES—*construction of coal sales contract as to price under federal control.* Under a contract for the sale of a large amount of coal by plaintiff to defendant entered into on September 22, 1919, providing for delivery in equal monthly instalments between October 30, 1919 and March 31, 1920, at $3.50 per ton, and making all orders of the federal fuel administrator a part of the contract, with provisions for advance or decline of the price to be paid in case of increase or decrease of the cost of mining, and that failure to ship or receive the full amount of the monthly instalment should not require either party to ship or receive in a succeeding month the amount not so shipped or received, the seller is entitled to receive the contract price for coal shipped after November 13, 1919, and is not restricted to $2.75, the price fixed by the fuel administrator under an order of October 30, 1919, where an order of such fuel administrator of November 12, 1919, provided that the earlier order should not apply to coal shipped on or after November 13 under bona fide contracts entered into prior to October 30, 1919, no price having been fixed at the date of the contract.

2. SALES—*enforceability of sales contract providing for delivery of in monthly instalments.* A contract for the sale of 6,000 tons of coal to be delivered in equal monthly instalments by the seller to the buyer and providing that failure to ship or receive coal to the full amount of the monthly instalments should not require either party to ship or receive, in subsequent months, the amount of coal not shipped or received during the month in question, imposes upon the buyer the obligation to receive each month's instal-

ment as it may be shipped irrespective of anything that may have taken place in preceding months and makes it liable in damages for failure to receive one month's instalment.

Appeal by defendant from the Municipal Court of Chicago; the Hon. Wells M. Cook, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1922. Affirmed. Opinion filed April 11, 1923.

Richberg, Ickes, Davies & Lord, for appellant; Charles L. Cobb, of counsel.

John J. Sherlock, for appellee.

Mr. Justice O'Connor delivered the opinion of the court.

Plaintiff brought suit against the defendant to recover $9,904.43, which it claimed to be due for coal sold and delivered to the defendant, and for damages occasioned by defendant's refusal to take certain of the coal. On the trial of the case plaintiff took the position that there was due it but $7,956.78, and for this amount there was a finding and judgment in its favor, to reverse which the defendant prosecutes this appeal.

There is no dispute as to the facts. The case turns on the construction of a certain contract entered into between the parties. The evidence shows that on September 22, 1919, the parties entered into a written contract whereby plaintiff agreed to sell and defendant agreed to buy 6,000 tons of coal at $3.50 per ton. The contract provided that the coal was to be shipped from West Virginia to Chicago in "as nearly equal monthly instalments as possible during the period beginning October 1, 1919, and ending March 31, 1920. * * *

"Failure to ship or receive coal, for any reason whatsoever, to the full extent of the monthly instalment in any one month, shall not require (or give the

option.to) either party to ship or receive in subsequent months the amount of coal not shipped or received during the month in question." There was a further provision that should the mining rate advance or decline the price of the coal should advance or decline one and one-half times the amount of the increase or decrease of the cost of mining, "but it is understood that during such times as prices are fixed by the United States Government, nothing contained in this contract shall be construed to authorize the exaction of any price in excess of the government maximum price." The contract further provided: "This contract is subject to all the regulations, requirements and conditions imposed by the United States Fuel Administrator in his original order, effective 7 a. m., December 29, 1917, and to any modifications of such original order that may be made in the future by the United States Fuel Administrator, and all of the regulations, requirements and conditions of said order or orders are hereby incorporated herein with the same force and effect as if set forth at length."

The order of the fuel administrator which became effective December 29, 1917, mentioned in the provision of the contract just quoted, provided that: "Every such contract for the sale of coal shall provide that the price of any coal delivered thereunder shall, with respect to each shipment of coal under such contract, not exceed the price at the mine as fixed by the President, or by the United States Fuel Administrator under authority of the President, in effect at the date of such shipment at the mine."

On September 22, 1919, the date the contract in question was entered into between the parties, there was in effect no order of the government fixing the price of coal, but afterwards, on October 30, 1919, an order was issued by the fuel administrator which fixed the price of the coal to be delivered under the contract in question and similar coal at $2.75 per ton. On Novem-

ber 12, 1919, another order was issued by the fuel administrator which provided that the order of October 30, 1919, fixing the price of coal at $2.75 per ton, should not apply to coal shipped on or after November 13, 1919, under bona fide contracts which had been entered into prior to October 30, 1919.

After the execution of the contract and up to October 30, 1919, certain coal was delivered under the contract and paid for at the rate of $3.50 per ton. No coal was delivered between October 30 and November 12, following. Between the latter date and March 1, 1920, 3,492.15 tons were delivered. No coal was delivered during March, 1920.

Plaintiff's position is that it was entitled to $3.50 per ton for the 3,492.15 tons less what payments had been made on account, and that it was further entitled to recover as damages 75 cents per ton, being the difference between the agreed price of $3.50 per ton and $2.75, the government price, for the 1,000 tons which were deliverable in March, and which the defendant refused to accept or receive. On the other hand, defendant's position is that the price of the coal delivered after November 13, 1919, should be fixed at $2.75 per ton; that it was not liable at all for any damages for failure to receive any part of the 1,000 tons for the month of March, because under the terms of the contract it was optional with defendant to receive this coal or any part of it. Defendant's further position is that even if it be held that under the contract it was required to take 1,000 tons in March, it could be held liable here only for failure to take 492.38 tons, because on December 18, 1919, it agreed to take from that time on at the rate of 1,000 tons per month; that it actually received 2,739.95 tons, leaving a balance which it could be compelled to receive of but 493.38.

1. The first question to be determined is the meaning of the contract entered into between the parties taken in connection with the orders entered by the

CHICAGO—FIRST DISTRICT—APRIL, 1923. 517

Consolidation Coal Co. v. Astrid S. Rosing, Inc., 228 Ill. App. 513.

fuel administrator. The defendant's position seems to be that since the contract provided that during such time as prices were fixed by the United States Government, nothing contained in the contract should be construed to authorize the exaction of any price in excess of the government maximum price, and the government price having been fixed on October 30, 1919, at $2.75 per ton, this fixed and determined the price of the coal in question. The effect of this contention is that the order of the fuel administrator of November 12 had no application to the contract in question. With this contention we cannot agree. That order expressly provides that the price of coal which had theretofore been fixed at $2.75 per ton should not apply to coal shipped after November 13 under bona fide contracts entered into prior to October 30, 1919. The contract in question having been executed on September 22, 1919, it was expressly excluded from the order fixing the price at $2.75 per ton, so that the price fixed in the contract, viz., $3.50 per ton, is the price to be paid by the defendant. This will further appear from the fact that this provision was inserted in the contract because the fuel administrator's order required that it be inserted in every contract for the sale of coal. In the fuel administrator's order of December 29, 1917, it was expressly required that every contract for the sale of coal should provide that the price of coal should not exceed that fixed by the government. This order was a part of the contract whether expressly there mentioned or not, but it is referred to in terms in the contract before us, for it is there stated that the contract is subject to this very order, and to such future orders and regulations as the government might make. Moreover, the provision of the contract to the effect that it shall not be construed to authorize the exaction of any price in excess of that fixed by the government can avail the defendant nothing because the order of November 12 expressly authorized the

price of $3.50 per ton by the withdrawal of the government price, since the contract was made prior to October 30, 1919.

2. Counsel for the defendant argue that although the contract contemplates the sale and delivery of 6,000 tons of coal in equal monthly instalments, "yet there is no obligation on either the seller to ship, or the buyer to receive, any instalments either in whole or in part." If this were a true construction of the contract, it would be no contract at all. It could be enforced by neither side. It is manifest that this is not the meaning of the contract. By it the plaintiff sold 6,000 tons of coal to be delivered in monthly instalments. The contract provided that failure to ship or receive the coal to the full extent of the monthly instalments in any one month should not require or give the option to either party to ship or receive, in subsequent months, the amount of coal not shipped or received during the month in question. If there had been delivered 1,000 tons of coal to the defendant for the month of March, this would still be less than the 6,000 tons purchased. By the terms of the contract the defendant was obligated to take 1,000 tons of coal in March irrespective of anything that may have taken place before that month. Having failed to do this, he is liable to the plaintiff for damages for failure to receive this month's shipment.

The judgment of the municipal court of Chicago is affirmed.

*Affirmed.*

THOMSON, P. J., and TAYLOR, J., concur.